NOT FOR PUBLICATION                                    (Doc. Nos. 14, 17)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

_____
                                                    :
SHEILA CIEMNIECKI,                                  :
                                                    :
                            Plaintiff,              :        Civil No. 09-6450 (RBK/KMW)
                                                    :
            v.                                      :        **OPINION**
                                                    :
PARKER McCAY P.A., et al.,                          :
                                                    :
                            Defendants.             :
_____             :

**KUGLER**, United States District Judge:

        This matter comes before the Court upon the motion of Defendants Parker McCay P.A.

and Raymond DiSanto (collectively, the "Parker McCay Defendants") to dismiss the Complaint

of Plaintiff Sheila Ciemniecki ("Plaintiff" or "Ms. Ciemniecki"), as well as upon the motion of

Defendant the Goodson Holding Company (sued <u>sub nom</u> The Central Record, Inc.) (the

"Central Record") to dismiss the Complaint – both for failure to state claims upon which relief

can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  The Complaint consists of

fourteen counts sounding in both common-law and constitutional tort.  For the reasons expressed

below, the Court will deny in part and grant in part the Parker McCay Defendants' motion to

dismiss, and grant the Central Record's motion to dismiss.

1

I.      **BACKGROUND[1]**

This action arises out of a false fire alarm that was raised at the Marlton, New Jersey law office of Defendant Parker McCay and that firm's alleged attempt to pin responsibility for the wrongdoing onto a longtime employee, who had recently fallen into disfavor with her superiors.

For over nine years, Ms. Ciemniecki worked as a law librarian at Parker McCay and received positive feedback and reviews.  In January of 2009, she received a meager raise and complained about it to Parker McCay's Human Resources Manager.  Subsequently, Ms. Ciemniecki was assigned to report to the Office Services Manager and was told that she would no longer be allowed to work a flexible schedule.  In late May of 2009, Ms. Ciemniecki began experiencing problems with her supervisor.  Her supervisor reported her to Parker McCay's Human Resources Director for working the wrong hours and docked her pay for taking an allegedly unauthorized business lunch.  Apparently, Ms. Ciemniecki's supervisor did not first attempt to informally resolve these issues with Ms. Ciemniecki before reporting her.  As a consequence, an argument between the two ensued, and Ms. Ciemniecki's supervisor will no longer interact with her.

On June 2, 2009, someone activated the fire alarm at Parker McCay's Marlton, New Jersey office.  The day was a busy one at Parker McCay, during which several meetings were held.  One of these meetings involved out-of-state individuals who apparently had been disruptive in the office and given the office staff some difficulty.  At the time the alarm was activated, Ms. Ciemniecki had just finished speaking with an attorney on the fourth floor and was in the hallway on her way back to the library located on the third floor.  Ms. Ciemniecki returned

---

[1]  The facts in this section are drawn from the allegations in Plaintiff's Complaint.

to the library, grabbed her purse, and evacuated the building with her colleagues.

The following day began as usual for Ms. Ciemniecki.  However, at three o'clock in the afternoon, Parker McCay's Chief Financial Officer, Ray DiSanto, stopped into the law library and asked her to accompany him down the hall to a conference room.  Inside, Ms. Ciemniecki was greeted by Parker McCay's Director of Human Resources and two Evesham Township Police Officers, Patrolmen David Niji and Sean McGinley, and asked to sit down.  Patrolman Niji asked Ms. Ciemniecki if she pulled the fire alarm, and Ms. Ciemniecki denied the accusation.  At this point, she was told that there was a surveillance video showing her pulling the fire alarm.  Ms. Ciemniecki asked to review the video, but her request was denied.  Patrolman Niji read Ms. Ciemniecki her Miranda rights, handcuffed her, and placed her under arrest for raising a false public alarm in violation of N.J. Stat. Ann. § 2A:33-3.  Ms. Ciemniecki asked Mr. DiSanto if she would be able to get her job back upon exoneration.  Mr. DiSanto replied that he saw the video and there was no doubt in his mind that it was Ms. Ciemniecki who pulled the alarm.  Ms. Ciemniecki was then led out of her workplace past her colleagues flanked by police.

At the station house, Ms. Ciemniecki underwent ordinary booking procedures, including fingerprinting and picturetaking.  Patrolman McGinley filed a criminal complaint with the Burlington County Prosecutor's Office for a violation of N.J. Stat. Ann. § 2C:33-3A.  After having spent approximately three hours in custody at the station, Ms. Ciemniecki was released.  Ms. Ciemniecki hired a lawyer to represent her against the charges.

Ms. Ciemniecki has since obtained a copy of the police report pertaining to the fire alarm incident at Parker McCay.  Apparently, it indicates that Mr. DiSanto contacted the Evesham Police Department the day after the false alarm to tell them that he had additional information to

3

relay about the false alarm.  Specifically, Mr. DiSanto told police that he had video footage showing a woman, later identified as Ms. Ciemniecki, pulling the alarm.  According to the police report, Patrolman Niji viewed the surveillance tape and stated that he observed Ms. Ciemniecki activate the alarm.

On June 11, 2009 a regional newspaper known as The Central Record published an article about the incident in a section entitled "On the Record" stating:

### Woman arrested for making false alarm

**EVESHAM** – A Haddonfield woman faces charges after pulling a fire alarm at a township office building.  Sheila Ciemniecki, 51, of Rhoads Avenue was charged with making a false public alarm.  On June 2, at 11:33 am township police and fire departments responded to 3 Greentree Centre for a report of an activated fire alarm and discovered that it had been false.
  The alarm activation caused the building's evacuation and a temporary interruption of the business there.
  Police did not give a reason as to to why Ciemniecki pulled the fire alarm. She was later released to await a hearing in municipal court.

(Complaint at 8.)  After reading the article, several of Ms. Ciemniecki's friends and a former colleague asked her if there was something wrong with her.

On July 21, 2009, the Burlington County Prosecutor's Office sent a letter to Ms. Ciemniecki's criminal defense attorney which stated that based upon their review of the video they were "clearly satisfied that dismissal of all charges is the appropriate course of action." (Complaint ¶ 55.)  On July 28, 2009, the Burlington County Prosecutor issued an administrative dismissal of the charge against Ms. Ciemniecki.

On December 23, 2009, Plaintiff filed a Complaint against the Parker McCay Defendants, Defendants Evesham Township, Evesham Township Police Department, Patrolman David Niji and Patrolman Sean McGinley (collectively, the "Evesham Defendants"), and the Central

Record.  The Complaint consists of fourteen counts.  Counts I, II, III, IV, V, VI, and XIV allege intentional and negligent defamation (slander), invasion of privacy (false light), negligent and intentional infliction of emotional distress, false imprisonment, and prima facie tort against the Parker McCay Defendants.  Counts VII, VIII, IX, and XIV allege negligent and intentional defamation (libel), invasion of privacy (false light), and prima facie tort against the Central Record.  Counts X, XI, XII, XIII, and XIV allege the deprivation of rights afforded by the New Jersey and Federal Constitutions and prima facie tort against the Evesham Defendants.[2]

On February 25, 2010, the Parker McCay Defendants filed a motion to dismiss the Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  Plaintiff filed a brief in opposition to the Parker McCay motion on April 5, 2010, to which the Parker McCay Defendants replied on April 12, 2010.  On March 1, 2010, the Central Record filed its own motion to dismiss for failure to state a claim.  Plaintiff filed a brief in opposition on April 5, 2010, to which the Central Record replied on April 12, 2010.  Accordingly, the motions are now ripe for consideration.

## II.    STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for failure to state a claim upon which relief can be granted.  With a motion to dismiss, "'courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled

---

[2]  The Evesham Defendants have asserted crossclaims for contribution and indemnification against the Parker McCay Defendants, which the Parker McCay Defendants have moved to dismiss.  The Parker McCay Defendants' motion to dismiss the Evesham Defendants' crossclaims is without the scope of this Opinion.

to relief.'" Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)).  In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

In making this determination, a court must engage in a two part analysis.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009); Fowler, 578 F.3d at 210-11.  First, the court must separate factual allegations from legal conclusions.  Iqbal, 129 S. Ct. at 1949.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.  Second, the court must determine whether the factual allegations are sufficient to show that the plaintiff has a "plausible claim for relief." Id. at 1950.  Determining plausibility is a "context-specific task" that requires the court to "draw on its judicial experience and common sense." Id.  A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible.  See id.

## III.   DISCUSSION

### A.    The Parker McCay Defendants' Motion to Dismiss

The Parker McCay Defendants move to dismiss all counts alleged against them in the Complaint.  In what appears to be an overlong brief dressed in a regulation brief's clothing, see L. Civ. R. 7.2(b), (d) (establishing page limits as well as acceptable typeface, font size, and spacing conventions), the Parker McCay Defendants make an array of arguments in support of dismissal.  Most of these arguments suffer from an overly-cramped reading of the Complaint's allegations.  Thus, the Court will deny the Parker McCay Defendants' motion to dismiss with respect to Counts I, II, III, IV, V, and VI, and will grant it with respect to Count XIV.

### 1.        Counts I & II: Defamation (Slander)

The Parker McCay Defendants argue that dismissal is appropriate because the defamation

claims are not plead with sufficient specificity; (2) an absolute privilege attaches to the allegedly

defamatory statement; (3) a qualified privilege attaches to the allegedly defamatory statement; (4)

the alleged statement is not defamatory; and (5) the Complaint does not allege actual malice.  For

the reasons discussed below, the Court rejects these arguments.

### i.        Lack of Specificity

The Parker McCay Defendants argue that Plaintiff has failed to satisfy the "fundamental

rule" of defamation pleading by failing to set forward the allegedly defamatory words

themselves.  These Defendants insist that New Jersey pleading rules require heightened

specificity in the context of defamation actions and take the position that these procedural rules

govern Plaintiff's pleadings in federal court.  These Defendants also argue that federal courts

disfavor defamation actions because such actions raise the specter of expressive curtailment.  By

way of contrast, Plaintiff argues that she need only plead her defamation action in conformity the

familiar notice-pleading approach embodied in Federal Rule of Civil Procedure 8.

A federal court sitting in diversity applies the Federal Rules of Civil Procedure, provided

the rule in question is valid and on-point. See Hanna v. Plumer, 380 U.S. 460, 473 (1965);

Mansman v. Tuman, 970 F. Supp. 389, 393 (E.D. Pa. 1997) (citing Hanna, 380 U.S. at 473).  See

generally, Erwin Chemerinksy, Federal Jurisdiction § 5.3 (5th ed. 2007).  Rule 8 is on-point here

because it articulates the federal pleading standard, and Defendants do not contend that it

embodies an invalid exercise of power under the Rules Enabling Act.  Thus, federal pleading

standards – not New Jersey pleading standards – govern the sufficiency of the Complaint.[3]

See Turk v. Salisbury Behavioral Health, Inc., No. 09-6181, 2010 WL 1718268, at *4 (E.D. Pa.

Apr. 27, 2010) ("The federal pleading standards apply to state law claims asserted in federal

court."); James v. Morgan, No. 2002/123, 2008 WL 5211408, at *3 (D.V.I. Nov. 5, 2008);

Palladino ex rel United States v. VNA of S. N.J., Inc., 68 F. Supp. 2d 455, 475 (D.N.J. 1999);

Joyce v. Alti Am., Inc., No. 00-5420, 2001 WL 1251489, at * 2 (E.D. Pa. 2001). See generally, 5

Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice & Procedure, §

1245 (3d ed. 2009) ("[I]t appears that adherence to a state's strict pleading requirements no

longer is necessary. Hanna makes it clear that Rule 8(a) should be followed.").

     The cases cited by the Parker McCay Defendants do not dictate a contrary result. In

Badrinauth v. Metlife Corp., for example, a plaintiff asserted a defamation claim, alleging that

the defendants posted a photograph of him "with an admonition disparaging [his] character."

No. 04-2552, 2006 WL 288098, at *6 (D.N.J. Feb. 6, 2006) (internal quotation marks omitted).

The defendants argued that New Jersey law required the complaint to specify the defamatory

words used. Id. (citing Darakjian v. Hanna, 840 A.2d 959 (N.J. Super. Ct. App. Div. 2004)).

The district court dismissed the defamation claim for failure to "meet the pleading requirements

for a claim of defamation under New Jersey law." Id. The court did not engage in an overt

vertical choice of law analysis. Instead, citing to the Third Circuit's decision in In re Alpharma

Sec. Litig., 372 F.3d 137, 147 (3d Cir. 2004), the court simply stated that the legal sufficiency of

a complaint is "based on whether it satisfies the relevant pleading requirements." Id.

---

[3] Of course, as New Jersey substantive law will govern, it is necessary to look to New Jersey law to determine "the general substance that a particular pleading should contain." See Palladino ex rel United States v. VNA of S. N.J., Inc., 68 F. Supp. 2d 455, 475 (D.N.J. 1999).

In re Alpharma Inc. Sec. Litig., the relevant pleading requirements for the plaintiff's Rule 10b-5 claim were those specially outlined by the Private Securities Litigation Reform Act, 15 U.S.C. § 78-4, et seq. (which of course is a federal statute) and Federal Rule of Civil Procedure 9(b).  Thus, In re Alpharma Inc. Sec. Litig, does not purport to articulate a rule that state pleading requirements govern diversity cases filed in federal court.  To the extent that Badrinauth cited In re Alpharma Inc. Sec. Litig. for this proposition, the Court declines the Parker McCay Defendants' invitation to follow it.  To the extent that Badrinauth simply concluded that the complaint's reference to an "admonition disparaging Plaintiff's character" was too vague to put the defendants on notice of the defamation claim against them, the Court simply observes that, for reasons explained below, the instant case is readily distinguishable.

Federal notice-pleading requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The Iqbal pleading regime arguably increases the required specificity by insisting that the complaint contain enough factual matter to render the claim for relief plausible as opposed to merely possible.  See Fowler, 578 F.3d at 210.  Under New Jersey law, defamation consists of: (1) a defamatory statement; (2) concerning the plaintiff; (3) which was false; (4) that was communicated to someone other than the plaintiff; (5) with fault at least amounting to negligence; and (6) damages.  Cristelli v. Filomena II, Inc., No. 99-2862, 1999 WL 1081290, at *2 (D.N.J. Dec. 1, 1999) (citing Monroe v. Host Marriott Serv. Corp., 999 F. Supp. 599, 603 (D.N.J. 1998)); DeAngelis v. Hill, 847 A.2d 1261, 1267-68 (N.J. 2004) (citing Restatement (Second) of Torts, § 558)).

In various verbal formulations, the Complaint alleges that Mr. DiSanto (and thus Parker McCay) defamed Ms. Ciemniecki by falsely accusing her of pulling the fire alarm – which in

9

New Jersey is a crime – to Patrolmen Niji and McGinley.  The Complaint affirmatively asserts

that Ms. Ciemniecki did not pull the fire alarm and suggests that Mr. DiSanto misrepresented this

fact to police in response to the drama Ms. Ciemniecki had apparently been causing at the firm.

The Complaint does not allege the precise words alleged to be defamatory.  In some

cases, this lack of specificity might be problematic.  In this case, however, it is not.  Despite their

protestations to the contrary, the Parker McCay Defendants are on notice of what Ms. Ciemniecki

believes Mr. DiSanto said about her to the police (that she committed the crime of falsely pulling

a fire alarm), and why she believes Mr. DiSanto bears fault for allegedly having made it (because

Mr. DiSanto either lied to the police to frame Ms. Ciemniecki or purposefully ignored the

videotape evidence exonerating her for a similar reason).  Such allegations are, quite consistent

with Iqbal, sufficient to state a defamation claim under Rule 8(a), regardless of whether New

Jersey would apply a more heightened standard to Plaintiff's pleading were the action prosecuted

in New Jersey state court.[4]  See Filomena II, Inc., 1999 WL 1081290, at *3 ("According to Rule

8, a defamation pleading does not need to cite precise defamatory statements, it must only

provide sufficient notice to the other party of the allegations made against him.").

## ii.    Absolute Privilege

The Parker McCay Defendants claim an absolute privilege to relay information to the

police preliminary to a proposed criminal prosecution.  This argument begins with the Second

Restatement of Torts § 587, which provides:

> A party to a private litigation or a private prosecutor or defendant in a criminal
> prosecution is absolutely privileged to publish defamatory matter concerning

---

[4]  The Court takes no position on the outcome of the instant motion under state pleading
standards.

10

another in communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as a part of, a judicial proceeding in which he participates, if the matter has some relation to the proceeding.

Restatement (Second) of Torts § 587 (1977).  Although § 587 does not purport to speak to statements made by non-party, private persons, official comments to the Second Restatement arguably interpret § 587 broadly enough to afford absolute immunity to Mr. DiSanto's alleged statement to police.  For example, comment b provides, in pertinent part, that absolute immunity:

> [A]pplies to communications made by a client to his attorney with respect to proposed litigation <u>as well as to information given and informal complaints made to a prosecuting attorney or other proper officer preliminary to a proposed criminal prosecution</u> whether or not the information is followed by a formal complaint or affidavit.

Restatement (Second) of Torts § 587 cmt. b. (emphasis added).

The Parker McCay Defendants argue that New Jersey courts have endorsed the approach to absolute privilege taken by the Second Restatement in related contexts.  As these Defendants correctly observe, New Jersey affords absolute immunity against defamation claims arising out of the filing of criminal complaints.  <u>See</u> <u>Pitts v. Newark Bd. of Educ.</u>, 766 A.2d 1206, 1209 (N.J. Super. Ct. App. Div. 2001); <u>Piper v. Scher</u>, 533 A.2d 974, 976 (N.J. Super. Ct. App. Div. 1987) (citing <u>Lone v. Brown</u>, 489 A.2d 1192 (N.J. Super. Ct. App. Div. 1985)).  This absolute immunity is conferred to protect the public's strong interest in freedom of access to the courts. <u>See</u> <u>Pitts</u>, 766 A.2d at 1209.  New Jersey also affords absolute immunity to statements made by a private investigator hired by an attorney to investigate a plaintiff's claim during the course of pretrial discovery.  <u>See</u> <u>Hawkins v. Harris</u>, 661 A.2d 284, 292 (N.J. 1995).  This absolute immunity is similarly conferred to afford parties an unqualified opportunity to explore the truth of a matter without fear of recrimination.  <u>Id.</u> at 290.

11

The Parker McCay Defendants further observe that a number of states have adopted absolute immunity for reports made by citizens to the police.  See, e.g., Ledvina v. Cerasani, 146 P.3d 70, 75 (Ariz. App. Ct. Div. 2 2006) (citing Gen. Elec. Co. v. Sargent, 916 F.2d 1119, 1125-27 (6th Cir. 1990); Borg v. Boas, 231 F.2d 788, 794-95 (9th Cir. 1956); Cutts v. Am. United Life Ins., Co., 505 So.2d 1211, 1215 (Ala. 1987); Starnes v. Int'l Harvester Co., 539 N.E. 2d 1372, 1374-75 (Ill. App. Ct. 1989); Flynn v. Boglarsky, 129 N.W. 674, 676 (Mich. 1911); Hall v. Pizza Hut, 396 N.W. 2d 809, 813 (Mich. App. Ct. 1986); McGranahan v. Dahar, 408 A.2d 121, 128 (N.H. 1979); White v. Basnett, 700 P.2d 666, 668 (Okla. App. Ct. 1985); Hott v. Yarbrough, 245 S.W. 676, 677 (Tex. Com. App. 1922)).  Although this appears to be the minority position, see Fridovich v. Fridovich, 598 So.2d 65, 67 (Fla. 1992) (collecting cases); Caldor v. Bowden, 625 A.2d 959, 969 (Md. 1993) (collecting cases), it is not without some persuasive force.

 For example, in Ledvina, a division of the Arizona Appellate Court adopted absolute immunity for both formal and informal reports made by individuals to police by focusing on the need to encourage unhindered communications to law enforcement authorities to facilitate the investigation and prosecution of crime.  146 P.3d at 74.  The court preferred absolute over qualified immunity out of a fear that otherwise the possibility of retaliatory defamation actions would "discourage free and unfettered reporting."  Id.  In the court's view, relaying information on a potential crime to police is the first step in a judicial proceeding; therefore, absolute immunity for such communications fits nicely into the framework of the Second Restatement. Id.  Although the court was cognizant that the rule of absolute immunity could on occasion protect individuals who intentionally make a false report, the court believed that the public policy of Arizona called for striking the balance in favor of protecting whistle-blowers.  Id. at 75.  The

court was satisfied that there existed adequate safeguards against intentionally false accusations in the form of criminal penalties for false reporting and/or tort actions for abuse of process or malicious prosecution.  Id. at 76.

The problem with the Parker McCay Defendants' argument is that New Jersey has explicitly declined to absolutely immunize statements made to a police officer for the purpose of bringing a criminal to justice.  In Dijkstra v. Westerlink, a plaintiff brought a defamation action against a defendant who falsely reported to police that the plaintiff had attempted to shoot him. 401 A.2d 1118, 1120 (N.J. Super. Ct. App. Div. 1979), certif. denied, 407 A.2d 1203.  The trial judge granted the defendants' motion to dismiss the defamation claim on grounds of absolute immunity.  Id. at 1120.  The Appellate Division disagreed and held that such communications were only qualifiedly privileged by reasoning that they occurred antecedent to the initiation of the judicial process.  Id. at 1120.  In the court's view, none of the judicial safeguards against malicious reporting – notice and a hearing, the comprehensive control of a trial judge, and the "availability of retarding influences such as false swearing and perjury prosecutions" – were present at such a preliminary stage.  Id. at 1121.

New Jersey courts – including the New Jersey Supreme Court – continue to cite Dijkstra for the proposition that "statements [made] to authorities for the prevention and detection of crime" are subject to a qualified privilege.  E.g., Dairy Stores, Inc. v. Sentinel Pub. Co., 516 A.2d 220 (N.J. 1986); Geyer v. Faiella, 652 A.2d 1245, 1247 (N.J. Super. Ct. App. Div. 1995). Moreover, as recently as 2008, the New Jersey Supreme Court has stated that: "Examples of qualified privileges are when people "make statements to authorities for the prevention and detection of crime."  See Senna v. Florimont, 958 A.2d 427, 435 (N.J. 2008).  In this case, then,

13

there can be no argument that absolute immunity is not available to the Parker McCay

Defendants.  Mr. DiSanto called the police, invited them to the building, and gave them

information regarding the previous day's crime.  Later, the patrolmen, not Mr. DiSanto, filed a

criminal complaint.  Thus, any statements Mr. DiSanto may have made to the police regarding

Ms. Ciemniecki's alleged criminal activity were not made during the course of a judicial

proceeding and were not subject to an absolute privilege under New Jersey law.

### iii.    Qualified Privilege

Alternatively, the Parker McCay Defendants argue that Plaintiff's claims are barred by a

qualified privilege.  As noted, "a statement charging a criminal violation, made to a law-

enforcement official, is qualifiedly privileged."  Williams v. Bell Telephone Labs., Inc., 623 A.2d

234, 239 (N.J. 1993).  The New Jersey Supreme Court has explained the privilege as follows:

> A communication "made bona fide upon any subject-matter in which the party
> communicating has an interest or in reference to which he has a duty, is privileged
> if made to a person having a corresponding interest or duty, although it contains
> criminatory matter which, without this privilege, would be slanderous and
> actionable"; the "fundamental test is the bona fides of the communication," and it
> is not privileged when the person making it has "full knowledge of its
> untruthfulness."

Id. at 240 (quoting Coleman v. Newark Morning Ledger Co., 149 A.2d 193 (1959)).  In other

words, "a communication to a law enforcement officer is generally held to be qualifiedly

privileged if it is made in good faith for the purpose of helping to bring a criminal to justice."

Dijkstra, 401 A.2d at 1121 (citing 50 Am. Jur. 2d, Libel & Slander, § 214 at 726 (1970)).  The

privilege is abused where "(1) the publisher knows the statement is false or the publisher acts in

reckless disregard of its truth or falsity; (2) the publication serves a purpose contrary to the

interests of the qualified privilege; or (3) the statement is excessively published."  Williams, 623

A.2d at 240; see Erickson v. Marsh & McLennan Co., Inc., 569 A.2d 793, 805 (N.J. 1990) ("A qualified privilege . . . is overcome on a showing of actual malice.").

The Complaint alleges that Ms. Ciemniecki did not pull the fire alarm, (Complaint ¶ 34), and that at the time the alarm was raised Ms. Ciemniecki was on the fourth floor of the building, (id. ¶¶ 22, 23). The Complaint further alleges that Mr. DiSanto nonetheless told the police that Ms. Ciemniecki was seen on a videotape pulling the fire alarm. (E.g., id. ¶ 52.) The Complaint also alleges Ms. Ciemniecki's belief that Mr. DiSanto made this allegedly false statement to the police "because of an animosity against her" stemming from the previous week's "falling-out" between Ms. Ciemniecki and her supervisor. (Id. ¶ 58.) If believed, these allegations are sufficient to support a finding that the qualified privilege does not apply (because Mr. DiSanto did not accuse Ms. Ciemniecki in good-faith and with the purpose of helping solve crime) or that the privilege has been abused (because Mr. DiSanto knew the accusation to be false or acted in reckless disregard of the fact that Ms. Ciemniecki did not pull the alarm). The Parker McCay Defendants' position that Mr. DiSanto actually believed the accusations he allegedly made to the patrolmen is a factual issue for another day.

### iv.    Defamatory Nature of Statements

The Parker McCay Defendants argue that Mr. Disanto's alleged statement to the police was not defamatory as a matter of law.

As a threshold legal matter, the Court must determine whether Mr. DiSanto's alleged statement is reasonably susceptible of defamatory meaning. See Romaine v. Kallinger, 537 A.2d 284, 296 (N.J. 1988). This inquiry should be guided by "'the fair and natural meaning which will be given [to the relevant language] by reasonable persons of ordinary intelligence'" as well as the

context in which the language occurs.  Id. (quoting Herrmann v. Newark Morning Ledger Co., 138 A.2d 61 (N.J. Super. Ct. App. Div. 1958), aff'd on rehearing, 140 A.2d 529 (N.J. Super. Ct. App. Div. 1958); Karnell v. Campbell, 501 A.2d 1029 (N.J. Super. Ct. App. Div. 1985)).  If the statement is susceptible of only one meaning and that meaning is defamatory, the statement is libelous as a matter of law.  Id.  On the other hand, if the statement is susceptible of only one meaning and that meaning is non-defamatory, the statement cannot be slanderous.  Id.  In cases where the statement is capable of both defamatory and non-defamatory meanings, the question of whether the content is defamatory properly rests with the trier of fact.  Id.

Generally speaking, defamatory words are those "that subject a person to ridicule or contempt, or that clearly sound to the disreputation of an individual."  Leang v. Jersey City Bd. of Educ., 969 A.2d 1097, 1114 (N.J. 2009) (quoting DeAngelis v. Hill, 847 A.2d 1261 (N.J. 2004)).  To determine whether a statement is defamatory, a court should consider "(1) the content, (2) the verifiability, and (3) the context of the challenged statement."  Id. (quoting DeAngelis, 847 A.2d at 1261) (internal quotation marks omitted).  Certain kinds of statements, however, "denote such defamatory meaning that they are considered defamatory as a matter of law."  Romaine, 537 A.2d at 291.  The "false attribution of criminality" is a prime example of such a statement.  Id.; see Dijkstra, 401 A.2d at 1120 ("The words sued upon charged the commission of a crime. Therefore they were defamatory and libelous Per se."); Hill v. Evening News Co., 715 A.2d 999, 1002 (N.J. Super. Ct. App. Div. 1998) (citing Devries v. McNeil Consumer Prods. Co., 593 A.2d 819 (N.J. Super. Ct. App. Div. 1991)) ("[C]ertain statements are defamatory per se, including statements that the subject of the statement committed a crime.").

As repeatedly noted, the Complaint in this case alleges that Mr. DiSanto accused Ms.

16

Ciemniecki of raising a false fire alarm to the police, which is a crime in New Jersey.  The Court is confident that a fact-finder could determine that accusing an innocent woman, who had never before pulled a fire alarm or been arrested for any crime, of raising a false fire alarm in an office building during a very busy working day that caused the building to be evacuated is a statement that tends to lower Ms. Ciemniecki's estimation in the community and subject her to disrepute. As a consequence, the Complaint alleges a statement that is susceptible of defamatory meaning. It also appears that, in light of the foregoing authority, Mr. DiSanto's alleged statement is defamatory as a matter of law, but for the purposes of denying the instant motion it is enough that a fact-finder could interpret Mr. DiSanto's alleged statement as being defamatory.

The Parker McCay Defendants argue that Mr. DiSanto's alleged statement to police was not susceptible of defamatory meaning, but this argument results from an overly cramped reading of the Complaint.  The Parker McCay Defendants appear to believe that, at most, Mr. DiSanto told the police that he had further information regarding a crime, and that a woman, later identified, as Sheila Ciemniecki was seen activating the fire alarm.  In other words, the Parker McCay Defendants appear to interpret Mr. DiSanto's statements as stopping short of a full-blown accusation.  On a motion to dismiss, however, the Parker McCay Defendants' interpretation of Mr. DiSanto's statements does not control.  As noted, Ms. Ciemniecki was not privy to the conversation between Mr. DiSanto and the police officers.  As a consequence, she does not know the exact words that were communicated.  Nonetheless, the Complaint clearly reveals Ms. Ciemniecki's belief that Mr. DiSanto told the police officers that Ms. Ciemniecki pulled the fire alarm.  If true, this statement is reasonably interpreted as conveying the meaning that Ms. Ciemniecki committed the crime of raising a false alarm.  See Karnell v. Campbell, 501 A.2d

1029, 1033 (N.J. Super. Ct. App. Div. 1985) (citing Kotlikoff v. The Community News, 444

A.2d 1086, 1090 (N.J. 1982) ("Where criminal allegations are concerned, a court needs to

examine a statement in context to determine whether it conveys the impression that a plaintiff is

being accused of a crime.").

      The Parker McCay Defendants also submit a somewhat confusing argument that can be

best summarized as follows.  Mr. DiSanto's alleged accusation may have imputed to Plaintiff the

violation of N.J. Stat. Ann. § 2C-33-3A; New Jersey cases and statutes give no indication that

this crime should be regarded as malum in se (in other words, as involving an act of moral

turpitude); therefore Mr. DiSanto's alleged accusation does not constitute "defamation per se";

and therefore the Complaint does not state an actionable defamation claim.

      As an initial matter, this argument appears to confuse two distinct concepts in defamation

law, namely "defamation per se" and "slander per se."  The former term refers to a statement

"whose defamatory meaning is so clear on its face that the court is not required to submit the

issue to the jury." Biondi v. Nassimos, 692 A.2d 103, 105 n.2  (N.J. Super. Ct. App. Div. 1997)

(citing Lawrence v. Bauer Publ'g & Printing, 446 A.2d 469 (N.J. 1982)).  By way of contrast, the

latter term refers to "four categories of slander which are considered so clearly damaging to

reputation that a plaintiff may establish a cause of action without presenting any evidence of

actual damage to reputation."  Id. (citing Ward v. Zelikovsky, 643 A.2d 972 (N.J. 1994)).

      The Parker McCay Defendants do not argue that Plaintiff has failed to plead special

damages; rather, these Defendants simply argue that Mr. DiSanto's alleged accusation is not

defamatory as a matter of law.[5]   The distinction can be critical; a complaint does not state a

slander claim absent factual allegations rising to the level of slander per se or setting-forth special

damages.  See Biondi, 692 A.2d at 105-06.  On the other hand, a complaint that alleges facts

supporting the proposition that the relevant communication tended to bring the plaintiff into

disrepute sufficiently alleges defamatory meaning, regardless of whether the statement is

regarded as per se defamatory.  Thus, in light of the Court's conclusion that Mr. DiSanto's

alleged statement is reasonably susceptible of defamatory meaning, the Parker McCay

Defendants' argument that the alleged statement is not defamatory per se is beside the point.

 Even if the Court were to read the Parker McCay Defendants' brief as arguing that Mr.

DiSanto's alleged statement was not slanderous per se (which it does not), their argument would

still fail.  Section 571 of the Second Restatement provides, in pertinent part:

> One who publishes a slander that imputes to another conduct constituting a
> criminal offense is subject to liability to the other without proof of special harm if
> the offense imputed is of a type which, if committed in the place of publication,
> would be (a) punishable by imprisonment in a state or federal institution, or (b)
> regarded by public opinion as involving moral turpitude.

Restatement (Second) of Torts, § 571.  This section has been cited favorably by New Jersey

Courts.  See Salzano v. North Jersey Media Group Inc., -- A.2d --, 2010 WL 1856222, at *22

(N.J. May 11, 2010); Biondi, 692 A.2d at 107; Pitts, 766 A.2d at 1210.

 Mr. DiSanto's alleged statement seems to fall squarely into the first prong of Section 571.

Moreover, this restatement of the law is clearly disjunctive, excusing proof of special damages if

the imputation of criminal conduct involves moral turpitude or is punishable by imprisonment in

---

[5]   The Parker McCay Defendants captioned their argument as "Plaintiff Does Not Present
Any Statement That Is Reasonably Susceptible of Defamatory Meaning."  (Defs.'s Br. at 13.)

state or federal prison.  N.J. Stat. Ann. 2C:33-3(a) is a crime of the third degree, which is

punishable in New Jersey with up to five years in prison.  N.J. Stat. Ann. § 2C:43-6a(3); State v.

Reed, 443 A.2d 744, 748 (N.J. Super. Ct. App. Div. 1982).  Thus, it appears as though Mr.

DiSanto's alleged statement is properly regarded as slanderous per se.  As a consequence, proof

of special damages is not required.[6]

In a last-ditch effort to evade Section 571's disjunctive, the Parker McCay Defendants

argue that New Jersey requires both prongs to be satisfied before a statement can be considered

slander per se and that the crime of raising a false public alarm does not involve moral turpitude.

The only New Jersey authority offered for the proposition that the rule articulated in

Section 571 is conjunctive in New Jersey is Ludlum v. McCuen, 17 N.J.L. 12 (1839).  In

Ludlum, a plaintiff-Postmaster brought a defamation action alleging that the defendant had

falsely accused him of breaking open his letters.  Id. at *2.  The New Jersey Supreme Court held

that this allegation, without more, could not be reasonably interpreted as imputing the violation

of any criminal law.  Id. at *3.  As the court observed, the Postmaster was authorized by the law

as it existed at the time to open letters in certain circumstances.  Id.  Thus, the bare statement that

the Postmaster opened an individual's letters did not import any crime.  Id.

In what appears to be dictum, the court then proceeded to express its opinion on whether

the words, if read as an accusation that the Postmaster had violated his official duty, would be

slanderous and actionable.  Id. at *4.  The brief discussion that ensued could be read for the

proposition that words imputing a violation of a law not malum in se are not actionable by way

---

[6]  The Court takes no position on whether the Complaint alleges facts supporting special
damages.

of slander without proof of special damages.  See id. ("Nevertheless, in relation to private

persons, I think no words are actionable, however penal the act may be with which they charge

the plaintiff, unless they impute to him, an act which is malum in se, and not merely malum

prohibitum.").

        For a variety of reasons (most of which should be self-evident), the Court is not

convinced that Ludlum articulates the current state of the law in New Jersey or otherwise adds

much to the analysis.  The law of defamation has undergone substantial changes in the over one

hundred and fifty years since the opinion was drafted.  During that period, New Jersey courts

have cited to it less than a dozen times.[7]  Much more recent New Jersey authority indicates that

the disjunctive Second Restatement approach is presently the law in New Jersey.  See, e.g.,

Biondi, 692 A.2d at 107 (citing Restatement (Second) of Torts § 571 (1977).  In any event, the

Court cannot dismiss the defamation claim on the basis that the alleged communication lacks a

defamatory meaning.

                        **v.      Fault**

        The Parker McCay Defendants argue that the Complaint does not sufficiently allege fault.

---

        [7] In a few cases, it is cited for historical propositions.  See, e.g., Maressa v. N.J. Monthly,
445 A.2d 376, 392 (N.J. 1982).  Other cases cite to it to address the issue of innuendo.  See, e.g.,
Kotok Bldg. v. Charvine Co., 443 A.2d 260, 261 (N.J. Super. Ct. L. Div. 1981).  Apparently,
only two cases cite to it to address the question of whether statements attributing criminality must
accuse crimes of moral turpitude.  Compare Moore v. Miers, 73 A. 32, 32 (N.J. 1909) ("There is
nothing slanderous in this, for there is no charge of criminality or moral turpitude, and it is not
pretended that the words are slanderous per se on any other of the recognized grounds.")
(emphasis added), with Sipp v. Coleman, 179 F. 997 (D.N.J. 1910) ("There is much confusion in
the older cases concerning whether accusing another of an indictable offense is slanderous per se,
regardless of the nature of the crime; but it may be considered settled that only where the crime
charged involves moral turpitude may the oral accusation be said to be slanderous per se . . . .
The changes, however, are upward, and must continue upwards until the standards of the Christ
shall be universally accepted.").

According to these Defendants, the actual malice standard applies because (1) Ms. Ciemniecki became a limited purpose public figure by virtue of holding a press-conference to publicize the filing of the instant Complaint; and (2) the false activation of a fire alarm involves a matter of public concern.  Predictably, the Parker McCay Defendants do not read the Complaint as alleging facts sufficient to support a claim of actual malice.  On the other hand, Plaintiff argues that a negligence standard is applicable because she is a private figure and the allegedly defamatory statements do not relate to matters of public concern.  In the alternative, Plaintiff argues that the Complaint does, in fact, allege that the Parker McCay Defendants acted with actual malice.

The actual malice standard, when applicable, requires a defamation plaintiff to prove that the allegedly defamatory statement was made with "with knowledge that it was false or with reckless disregard of whether it was false or not."  See New York Times Co. v. Sullivan, 376 U.S. 254, 279-80 (1964).  In New Jersey, "[t]he actual malice standard will apply when the alleged defamatory statement concerns a public figure or a public official or involves a matter of public concern."  Senna, 958 A.2d at 443.(citing Curtis Publ'g Co. v. Butts, 388 U.S. 130, 163-65 (1967) (Warren, C.J., concurring); New York Times, 376 U.S. at 279-80; Turf Lawnmower Repair, Inc. v. Bergen Record Corp., 655 A.2d 417 (N.J. 1995)).

A person is a public figure for all purposes when she has achieved "'pervasive fame or notoriety.'"  Senna, 958 A.2d at 436 n.9 (quoting Gertz v. Robert Welch, Inc., 418 U.S. 323, 351 (1974)).  An otherwise private person can become a limited purpose public figure if she "voluntarily interjects [herself] or is drawn into a particular public controversy."  Id. (citation omitted).  The New Jersey Supreme Court has explained that:

[W]hen a private person with sufficient experience, understanding and knowledge

22

> enters into a personal transaction or conducts his personal affairs in a manner that one in his position would reasonably expect implicates a legitimate public interest with an attendant risk of publicity, defamatory speech that focuses upon that public interest will not be actionable unless it has been published with actual malice.

Sisler v. Gannett Co., 516 A.2d 1083 (N.J. 1986).

In this case, the Complaint does not allege that Ms. Ciemniecki has attained pervasive fame or notoriety.  In fact, the Complaint paints the picture of a rather private individual – a longtime law-abiding, law librarian at a private law firm – that is not consistent with all-purpose public figure.  The question then becomes whether the Complaint reveals facts sufficient to confer on Ms. Ciemniecki limited purpose public figure status.  According to the Complaint, Ms. Ciemniecki did not pull the fire alarm or engage in any other activity that would constitute voluntary interjection prior to the alleged defamation.  The fact that she later held a press-conference to publicize the filing of the instant litigation does not render her a limited purpose public figure retroactively.  See Silvester v. Am. Broadcasting Co., 839 F.2d 1491, 1496 (11th Cir. 1988) (plaintiff must have been a public figure prior to the publication of the particular defamatory speech).  Moreover, as the Complaint tells it, Ms. Ciemniecki was wholly sucked into the limelight of this situation by the Parker McCay and Evesham Defendants for actions Ms. Ciemniecki categorically denies ever having taken.  See Hutchinson v. Proxmire, 443 U.S. 111, 134 (1979) ("[T]hose charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure.").  As a consequence, the Court cannot find, for the purposes of this motion, that Ms. Ciemniecki was a limited purpose public figure.

Even if Ms. Ciemniecki is not a public figure, the Parker McCay Defendants argue that she should be held to the actual malice standard by virtue of the notion that raising a fire alarm

implicates important matters of public concern.  New Jersey provides greater protection to speech

involving matters of public concern than required by the First Amendment.  Senna, 958 A.2d at

436.  The actual malice standard is implicated as a matter of course where a media or media-

related defendant publishes a news story regarding "public health and safety, a highly regulated

industry, or allegations of criminal or consumer fraud, or a substantial regulatory violation."  Id.

at 443-44.  In cases of non-media speech, the rule is less categorical, requiring the court to

"consider the content, form, and context of the speech."  Id. at 444.

The Complaint does not contain sufficient facts for this Court to conclude at this time that

the false fire alarm at the business location of the Parker McCay Defendants rose to the level of a

matter of public concern vis-a-vis the non-media Parker McCay Defendants.  Obviously,

sounding a false fire alarm is no trivial matter.  Nonetheless, the Complaint does not allege facts

that would place this particular false fire alarm squarely in the realm of a substantial public

concern.  According to the Complaint, the false alarm was an isolated event, did not result in

serious physical injury, and was confined to one particular office building on one particular day.

See Wolston v. Reader's Digest Ass'n, Inc., 443 U.S. 157, 167 (1979) (mere newsworthiness is

not sufficient to create a public controversy).  Therefore, the Court is reticent to decide, upon a

motion to dismiss, that the speech in question was a matter of public concern sufficient to

implicate the actual malice standard.

Moreover, even if the actual malice standard were applicable, the Court is of the opinion

that the Complaint alleges it sufficiently.  The Complaint alleges that "The Parker McCay

Defendants published false and defamatory statements . . . with knowledge of their falsity and/or

with reckless disregard as to their truth or falsity."  (Complaint ¶ 71.)  Read in the context of Ms.

Ciemniecki's denial of having pulled the alarm, this statement clearly expresses the belief that Mr. DiSanto must have known his accusation was false because the video could not have shown Ms. Ciemniecki doing something she did not do.  In light of the foregoing, the Court will not dismiss Counts I and II.

### 2.    Count III: Invasion of Privacy (False Light)

The Parker McCay Defendants ask the Court to dismiss Count III because (1) the absolute and qualified privileges governing defamation apply; (2) it is not plead with sufficient particularity; (3) invasion of privacy requires the publication of private facts; and (4) Mr. DiSanto's statement did not place Ms. Ciemniecki in a false light because the statement is not highly offensive.

As an initial matter, the Court notes that it need not address in any detail the Parker McCay Defendants' first three arguments.  The Court has already determined that neither an absolute nor qualified privilege shields the Parker McCay Defendants from Plaintiff's defamation claims at this time.  Moreover, the Court has also already concluded that Mr. DiSanto's statement, upon which Count III is based, is plead with sufficient particularity under Rule 8. Finally, as Plaintiff makes clear in her opposition brief, the Complaint does not bring a claim for invasion of privacy by way of unreasonable publication of private facts; rather, the only invasion of privacy tort asserted in the Complaint is that of false light.

To state a claim for the tort of false light, a plaintiff must allege (1) placement in a false light that would be highly offensive to a reasonable person; and that (2) "the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."  Leang, 969 A.2d at 1116.  "The publicized material in a false-

light claim must constitute a 'major misrepresentation of [plaintiff's] character, history, activities, or beliefs.'" Romaine, 537 A.2d at 295 (citation omitted).  Hypersensitive persons are not specially protected as "the material publicized 'must be something that would be objectionable to the ordinary person under the circumstances.'" Id. (citing W. Keeton, D. Dobbs, R. Keeton & D. Owen, Prosser and Keeton on the Law of Torts, § 117, at 864 (5th ed. 1984)).

In this case, the accusation that Ms. Ciemniecki falsely pulled a fire alarm at a professional office building stands out in sharp contrast against the picture of Ms. Ciemniecki painted in the Complaint as a law-abiding librarian.  Due in large part to the serious consequences that can ensue when unwitting persons are led to believe that they are operating in the context of an emergency situation, raising a false alarm is generally regarded as a rather despicable act.  That the imputation of such activity to ordinary persons is highly offensive can be inferred from the stigma children learn to attach to acts of "crying wolf."  See The Boy Who Cried Wolf, http://en.wikipedia.org/wiki/The_Boy_Who_Cried_Wolf (last visited June 6, 2010). As a result, the Court cannot hold as a matter of law that the statement Mr. DiSanto allegedly made to police was not highly offensive.  Accordingly, the Court will not dismiss Count III.

### 3.    Counts IV & V: Infliction of Emotional Distress

The Parker McCay Defendants argue that Counts IV and V should be dismissed because they believe the Complaint fails to state a claim for defamation.  See G.D. v. Kenny, 984 A.2d 921 (N.J. Super. Ct. App. Div. 2009) ("It would obviously be intolerably anomalous and illogical for conduct that is held not to constitute actionable defamation nevertheless to be relied on to sustain a different cause of action based solely on the consequences of that alleged defamation."). Because the Court has declined the Parker McCay Defendants' invitation to dismiss the

defamation claims, the Court must similarly decline to dismiss Counts IV and V on this basis.

### 4.    Count VI and XIV: False Imprisonment and Prima Facie Tort

The Parker McCay Defendants argue that Count VI should be dismissed because they do not believe there is any basis to conclude that the Plaintiff was in the conference room against her will and that there was legal authority for the questioning.  The Complaint clearly alleges that Ms. Ciemniecki was not free to leave the conference room and that the police had no basis for arresting her because she did not pull the fire alarm and therefore could not have been caught on camera pulling the fire alarm.  The Complaint further alleges that the Parker McCay Defendants falsely accused Plaintiff of having pulled the fire alarm to retaliate against her.  Accordingly, the Court declines to dismiss Plaintiff's false imprisonment claim.

The Parker Mccay Defendants also argue that Count XIV should be dismissed because there are other common law claims for which Plaintiff can recover.  A prima facie tort claim in New Jersey is designed to provide a cause of action for "intentional, willful and malicious harms" that fall within the gaps of the law.  Dixon v. CEC Ent., Inc., 2008 WL 2986422, at *9 (N.J. Super. Ct. App. Div. Aug. 6, 2008) (per curiam) (quoting Taylor v. Metzger, 706 A.2d 685, 701 (N.J. 1998)).  The prima facie tort should not be invoked "when essential elements of an established and relevant cause of action are missing."  Taylor, 706 A.2d at 701 (citing Yeitrakis v. Schering-Plough corp., 804 F. Supp. 238, 250-51 (D.N.M. 1992)).  Moreover, "the availability of the prima facie tort doctrine is limited exclusively to those instances of intentional and culpable conduct unjustified under the circumstances that, as a threshold matter, do not fall within a traditional tort cause of action."  Dixon, 2008 WL 2986422, at *10 (citation omitted).

As this Opinion makes clear, the Complaint states a claim for a number of established

27

torts.  Moreover, there is no willful conduct alleged in the Complaint that is not encompassed by these traditional actions.  As a consequence, the Court will grant the Parker McCay Defendants' motion to dismiss Count XIV.

####    B.      The Central Record's Motion to Dismiss

The Central Record asks the Court to dismiss those counts in the Complaint alleged against it.  The Complaint reproduced the text of the article in full, (see Complaint ¶ 47), and therefore is properly before the Court at this stage.

The Central Record argues that the Court should dismiss Plaintiff's libel claims because (1) the Complaint has pled only conclusory allegations of malice and negligence; (2) the actual malice standard applies and Plaintiff cannot meet this burden; (3) the Fair Comment Privilege applies; and (4) the article is not defamatory.  Because the Court does not believe that the Central Record article, taken as a whole, relays information alleged to be false, the Court will grant the Central Record's motion to dismiss on this basis and will not consider the Central Record's remaining arguments.

As noted, a defamation plaintiff show that the allegedly defamatory communication was false.  DeAngelis, 847 A.2d at 1267.  To determine the meaning of a given article, the court must "evaluate the language in question 'according to the fair and natural meaning which would be given it by reasonable persons of ordinary intelligence.'"  Molin v. The Trentonian, 687 A.2d 1022, 1023 (N.J. Super. Ct. App. Div. 1997) (quoting Herrmann, 138 A.2d at 61).  "In assessing the language, [the district court] must view the publication as a whole and consider particularly the context in which the statement was made."  Id. (citing Romaine, 537 A.2d at 284).  This includes reviewing headlines in conjunction with the body of the article.  Id. at 1024.

In Molin, a man was arrested for stalking a woman, and a New Jersey daily newspaper known as the Trentonian published an article several days later under the headline: "STALKER'S ARREST ENDS YEAR OF TERROR." Id. at 1023. The article reported "the circumstances under which the arrest took place, where it occurred, and what the [man] had done in order to prompt being arrested." Id. at 1024. The article further reported that the man was being held on bail for a violation of a recently enacted anti-stalking law. Id. The article referred to the man as the "alleged stalker" throughout and included a picture of the man with a caption reading "CHARGED." Id. The man subsequently brought a defamation suit against the Trentonian on the theory that the article falsely accused him of being a stalker when he had not been convicted of the crime. Id. at 1023.

The motion judge granted summary judgment, holding that the plaintiff was unable to prove that the statements in the article were false.[8] Id. On appeal, the plaintiff argued that the headline accused him, as a factual matter, of being a stalker; whereas, at the time, he was only an alleged stalker. Id. The Appellate Division affirmed the grant of summary judgment. Id. at 1022. The court reasoned that although the headline "states that the stalker has been arrested" the rest of the article precluded the possibility that "a reasonable person could interpret that plaintiff has been anything but arrested and charged for stalking." Id. at 1024 (emphasis added).

In this case, there are two sentences, which, if viewed in isolation, could perhaps lead to the conclusion that the article was accusing Plaintiff of actually having pulled the alarm. The

_____

[8] The motion judge also held that the arrest – one of the first under the anti-stalking statute – was a matter of legitimate public interest to which the fair comment privilege attached and that the plaintiff could not show actual malice. Molin v. The Trentonian, 687 A.2d 1022, 1023 (N.J. Super. Ct. App. Div. 1997).

29

first sentence of the article states: "A Haddonfield woman faces charges after pulling a fire alarm at a township office building."  (Complaint ¶ 47.)  The second to last sentence of the article states: "Police did not give a reason as to why Ciemniecki pulled the fire alarm."  (Id..)  Taken in context of the article as a whole, however, these statements cannot be reasonably read to imply that the Central Record was asserting that Ms. Ciemniecki actually pulled the fire alarm.  The six-sentence article appeared in a section of the newspaper entitled "On the Record"; it did not purport to be a work of independent investigative journalism.  The article, such as it is, focuses on the arrest of Ms Ciemniecki, and its headline – "Woman arrested for making false alarm" – colloquially reflects this scope.

In fact, the first allegedly offending sentence itself makes clear that Ms. Ciemniecki was only "facing charges."  The article concluded by indicating that Ms. Ciemniecki was awaiting a hearing in municipal court, thus laying to rest any residual doubt in the reader's mind that Ms. Ciemniecki may have been convicted for the charged offense.  With these observations in mind, the only reasonable reading of this article is that Ms. Ciemniecki was arrested for the crime of making a false public alarm and that Ms. Ciemniecki was released and awaited a hearing on the offense for which she was arrested.  Ms. Ciemniecki agrees that she was arrested for and charged with the crime of making a false public alarm and that she was released pending a hearing.  Thus, the Complaint does not allege a viable defamation claim against the Central Record.

As Plaintiff observes, it would have been preferable for the Central Record to report that Ms. Ciemniecki faced charges after <u>allegedly</u> pulling a fire alarm and to query as to why Ms. Ciemniecki <u>allegedly</u> pulled the fire alarm.  In fact, a case could be made that this article is a fine example of sloppy journalism.  However, the mere fact that the article could have been written

more clearly does not, under the particular facts of this case, support the reasonable conclusion that this article conveyed the message that Ms. Ciemniecki actually pulled the fire alarm.  It does not convey such a message to a reasonable reader.  It conveys the message that she was arrested for pulling a fire alarm.  The Complaint admits that she was so arrested.  Thus, the Court will grant the Central Record's motion to dismiss Counts VII and VIII.

As noted, to state a claim for the tort of false light, a plaintiff must allege that the defendant placed the plaintiff in a light that was false, knowing or recklessly disregarding its falsity.  See Leang, 969 A.2d at 1116.  Based on the Court's conclusion that the Central Record article is not susceptible to being read as conveying false information, the Court must also dismiss the false light claim.  Moreover, the Court will also dismiss Plaintiff's claim of prima facie tort for failure to state a claim.  As noted, the prima facie tort should not be invoked "when essential elements of an established and relevant cause of action are missing."  Taylor, 706 A.2d at 701.  In this case, the essential element of falsity is missing from Plaintiff's traditional defamation and invasion of privacy claims.

Normally, a district court is compelled to grant leave to amend a complaint that it has dismissed for failure to state a claim.  See Carmen v. Metrocities Mortg., No. 08-2729, 2010 WL 421115, at *7 (D.N.J. Feb. 1, 2010) (citing Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000)).  The rule is not absolute; however, as leave to amend is inappropriate where it would cause undue delay, the amendment was motivated by bad faith or dilatory motive, the amendment would cause prejudice, or the amendment would be futile.  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).  In this case, the article was reproduced fully in the Complaint, and the Court has decided that it cannot be reasonably read as asserting that Ms.

Ciemniecki actually committed the crime charged.  Accordingly, the Court will not grant leave to amend as doing so would be futile.

**IV.    CONCLUSION**

For the foregoing reasons, the Court will deny the Parker McCay Defendants' motion to dismiss as to Counts I, II, III, IV, V, and VI.  The Court will grant the Parker McCay Defendants' motion to dismiss as to Count XIV.  The Court will grant the Central Record's motion to dismiss Counts VII, VIII, IX, and XIV.  An appropriate Order shall enter.


Dated: 6-7-2010                                            /s/ Robert B. Kugler
                                                          ROBERT B. KUGLER
                                                          United States District Judge