NOT FOR PUBLICATION                                        (Doc. Nos. 94, 95)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

_____
                                        :
SHEILA CIEMNIECKI,                      :
                                        :
                    Plaintiff,          :        Civil No. 09-6450 (RBK/KMW)
                                        :
          v.                            :        **OPINION**
                                        :
PARKER McCAY P.A., et al.               :
                                        :
                    Defendants.         :
_____ :

**KUGLER**, United States District Judge:

      This matter comes before the Court upon the motion of Defendants Parker McCay P.A. and Raymond DiSanto (collectively, the "Parker McCay Defendants") for summary judgment concerning the Complaint of Plaintiff Sheila Ciemniecki ("Plaintiff" or "Ms. Ciemniecki"), as well as upon the motion for summary judgment submitted by Defendants Officer David Niji, Officer Sean McGinley (collectively, the "Officers"), and the Township of Evesham ("the Township").  The Amended Complaint consists of fourteen counts sounding in both common-law and constitutional tort.  For the reasons expressed below, the Court will deny in part and grant in part the Parker McCay Defendants' summary judgment motion, and grant the Officers' and the Township's summary judgment motion.

1

I.    **BACKGROUND**[1]

This action arises out of a false fire alarm raised at the Marlton, New Jersey law office of Defendant Parker McCay and the firm's alleged attempt to assign responsibility for the wrongdoing to a longtime employee, who had allegedly recently fallen into disfavor with her superiors.

For over nine years, Ms. Ciemniecki worked as a law librarian at Parker McCay and received positive feedback and reviews.  In January of 2009, she received a meager raise and complained about it to Parker McCay's Human Resources Manager.  Subsequently, Ms. Ciemniecki was assigned to report to the Office Services Manager and was told that she would no longer be allowed to work a flexible schedule.  In late May of 2009, Ms. Ciemniecki began experiencing problems with her supervisor.  Her supervisor reported her to Parker McCay's Human Resources Director for working the wrong hours and docked her pay for taking an allegedly unauthorized business lunch.  Apparently, Ms. Ciemniecki's supervisor did not first attempt to informally resolve these issues with Ms. Ciemniecki before reporting her.  As a consequence, an argument between the two ensued, and Ms. Ciemniecki's supervisor thereafter refused to interact with her.

On June 2, 2009, someone activated the fire alarm at Parker McCay's Marlton office. Parker Defs.' Statement of Material Facts (SMF) ¶ 1.  The day was a busy one at Parker McCay, during which several meetings were held.  Pl. SMF ¶ 59.  One of these meetings involved out-of-state individuals who apparently had been disruptive in the office and had given the office staff some difficulty.  Compl. ¶ 25.  At the time the alarm was activated, Ms. Ciemniecki had just finished speaking with an attorney on the fourth floor and was in the hallway on her way back to

---

[1] The factual background in this case has been set out in detail in the Court's prior opinions (Doc. Nos. 39 and 56). Therefore, only the facts relevant to the resolution of the instant motions will be set forth here.

the library located on the third floor.  Ms. Ciemniecki returned to the library, grabbed her purse, and evacuated the building with her colleagues.

The following day began as usual for Ms. Ciemniecki.  However, at approximately three thirty in the afternoon, Parker McCay's Chief Financial Officer, Ray DiSanto, stopped into the law library and asked her to accompany him down the hall to a conference room.  Id. ¶ 185. Inside, Ms. Ciemniecki was greeted by Paula Berardi, Parker McCay's Director of Human Resources, and two Evesham Township Police Officers, Patrolmen David Niji and Sean McGinley, and asked to sit down.  Id. ¶ 191.  Patrolman Niji asked Ms. Ciemniecki if she pulled the fire alarm, and Ms. Ciemniecki denied the accusation.  At this point, she was told that there was a surveillance video showing her pulling the fire alarm.  Id. ¶ 194.  Ms. Ciemniecki asked to review the video, but her request was denied.  Id. ¶ 195.  Patrolman Niji read Ms. Ciemniecki her Miranda rights, handcuffed her, and placed her under arrest for raising a false public alarm in violation of N.J. Stat. Ann. § 2A:33-3.  Ms. Ciemniecki asked Mr. DiSanto if she would be able to get her job back upon exoneration.  Mr. DiSanto allegedly replied that he saw the video and stated, "I have no doubt in my mind that it you [Ms. Ciemniecki] who pulled the alarm."  Id. ¶ 204 (citing McGinley Dep., 88).  Ms. Ciemniecki was then led out of her workplace by the police officers.

At the station house, Ms. Ciemniecki underwent ordinary booking procedures, including fingerprinting and picturetaking.  Pl. SMF ¶¶ 251-254.  Patrolman McGinley filed a criminal complaint with the Burlington County Prosecutor's Office for a violation of N.J. Stat. Ann. § 2C:33-3A.  After having spent approximately three hours in custody at the station, Ms. Ciemniecki was released.  Ms. Ciemniecki hired a lawyer to represent her against the charges.

Ms. Ciemniecki has since obtained a copy of the police report pertaining to the fire alarm incident at Parker McCay.  Apparently, it indicates that Mr. DiSanto contacted the Evesham Police Department the day after the false alarm to tell the police that he had additional information to relay about the false alarm.  Specifically, Mr. DiSanto told police that he had video footage showing a woman, later identified as Ms. Ciemniecki, pulling the alarm.  According to the police report, Patrolman Niji viewed the surveillance tape and stated that he observed Ms. Ciemniecki activate the alarm.  Id. ¶¶ 298-305.

On July 21, 2009, the Burlington County Prosecutor's Office sent a letter to Ms. Ciemniecki's criminal defense attorney, which stated that based upon their review of the video, they were "clearly satisfied that dismissal of all charges is the appropriate course of action." Complaint ¶ 55.  On July 28, 2009, the Burlington County Prosecutor issued an administrative dismissal of the charge against Ms. Ciemniecki.

On December 23, 2009, Plaintiff filed a Complaint against the Parker McCay Defendants, Defendants Evesham Township, Evesham Township Police Department, Patrolman David Niji and Patrolman Sean McGinley (collectively, the "Evesham Defendants"), and the Central Record newspaper.[1]  The Complaint consists of thirteen counts.  Counts I-VII, IX, and X allege intentional and negligent defamation (slander), invasion of privacy (false light), negligent and intentional infliction of emotional distress, false imprisonment, abuse of process, and prima facie torts.  Count VIII alleges a New Jersey common law wrongful termination Pierce claim against Parker McCay only.[2]

On July 7, 2011, the Parker McCay Defendants and the Township and Officers filed their motions for summary judgment.  All parties have filed their responsive briefs, and the motions

---

[1] The Central Record has since been dismissed from the case.
[2] Plaintiff has withdrawn her claims for negligent concealment of evidence and intentional concealment of evidence. Pl. br. at 2 n.2.

are now ripe for consideration.  At this time the Court denies Plaintiff's motion for leave to file a sur-reply for failure to file a supporting brief pursuant to Local Rule 7.1(d)(1).[3]

## II.   STANDARD

Summary judgment is appropriate where the court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

"[T]he party moving for summary judgment under Fed.R.Civ.P. 56(c) bears the burden of demonstrating the absence of any genuine issues of material fact."  Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996).  The moving party may satisfy its burden either by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  If the moving party satisfies its burden, the nonmoving party must respond by "set[ting] out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  "If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."  Id.  A party

---

[3] Notwithstanding Plaintiff's failure to file a supporting brief pursuant to Local Rule 7.1(d)(1), the Court finds that Plaintiff's proposed sur-reply consists substantially of arguments originally made in Plaintiff's opposition brief to Defendant's motion, and fails to point to any exceptional circumstances warranting the filing of a sur-reply.

cannot oppose a motion for summary judgment by simply relying on the pleadings in its defense. Fed. R. Civ. P. 56(e).

## III.   DISCUSSION

### A.   The Parker McCay Defendants' Summary Judgment Motion

The Parker McCay Defendants move for summary judgment as to all counts alleged against them in the Complaint.  For the reasons discussed below, the Court grants the Parker McCay Defendants' summary judgment motion with respect to the counts for false imprisonment ("Count VI") and negligence ("Count IX"), and denies the Parker McCay Defendants' summary judgment motion with respect to all other counts.

### 1.   Counts I & II: Defamation (Slander)

The Parker McCay Defendants argue that summary judgment is appropriate because a qualified privilege attaches to the allegedly defamatory statement, or because the alleged statement is not defamatory.  For the reasons discussed below, the Court rejects these arguments.

### a.   Defamatory Nature of Statements Made by Parker McCay and Raymond DiSanto to Police

The Parker McCay Defendants argue that Plaintiff's claims are barred by a qualified privilege.  Under New Jersey law, "a statement charging a criminal violation, made to a law-enforcement official, is qualifiedly privileged."  Williams v. Bell Telephone Labs., Inc., 623 A.2d 234, 239 (N.J. 1993).  The New Jersey Supreme Court has explained the privilege as follows:

> A communication "made bona fide upon any subject-matter in which the party communicating has an interest or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, although it contains criminatory matter which, without this privilege, would be slanderous and actionable"; the "fundamental test is the bona fides of the communication," and it

> is not privileged when the person making it has "full knowledge of its
> untruthfulness."

Id. at 240 (quoting Coleman v. Newark Morning Ledger Co., 149 A.2d 193 (1959)).  In other

words, "a communication to a law enforcement officer is generally held to be qualifiedly

privileged if it is made in good faith for the purpose of helping to bring a criminal to justice."

Dijkstra, 401 A.2d at 1121 (citing 50 Am. Jur. 2d, Libel & Slander, § 214 at 726 (1970)).  The

privilege is abused where "(1) the publisher knows the statement is false or the publisher acts in

reckless disregard of its truth or falsity; (2) the publication serves a purpose contrary to the

interests of the qualified privilege; or (3) the statement is excessively published."  Williams, 623

A.2d at 240; see Erickson v. Marsh & McLennan Co., Inc., 569 A.2d 793, 805 (N.J. 1990) ("A

qualified privilege . . . is overcome on a showing of actual malice.").

   Plaintiff states that she did not pull the fire alarm, and that at the time the alarm was

raised, she was on a floor of the building other than on the third floor, where the fire alarm was

activated.  Plaintiff states that Mr. DiSanto is liable for defamation because he told the police that

Ms. Ciemniecki was seen on a videotape pulling the fire alarm, when in fact the videotape does

not show this incident.  Pl. br. at 13-14 (citing McGinley Dep. at 88; Ex. P-53 (Police Report)).

Plaintiff stated in her deposition that Mr. DiSanto made this allegedly false statement to the

police because of a personal animosity towards Plaintiff.  See Pl. Dep. at 287-288.  In support of

her belief, Plaintiff notes that Mr. DiSanto is close friends with Ms. Carmichael, Plaintiff's

supervisor.  See Pl. SMF ¶¶ 52-56.  Plaintiff alleges that approximately one week prior to

Plaintiff's arrest, Plaintiff had an argument with Ms. Carmichael.   This argument allegedly

caused Ms. Carmichael to "harbor[] animosity against [Plaintiff,] because Plaintiff made more

money per hour than her and Plaintiff had had a flexible schedule since the beginning of her

employment with Parker McCay."  Pl. br. at 3.  Subsequently, Plaintiff states that Ms.

Carmichael began to speak badly about Plaintiff to senior management at Parker McCay.  Pl. br. at 4-6.

Plaintiff argues that the qualified privilege does not apply to Mr. DiSanto's statement to the police that Plaintiff pulled the fire alarm, because Mr. DiSanto either had significant doubts regarding whether Plaintiff actually pulled the fire alarm, or Mr. DiSanto actually knew that Plaintiff had not pulled the fire alarm at the time he made his statement to the police.  First, Plaintiff notes that the short segment of video that the Parker Defendants showed the police did not show Plaintiff pulling the fire alarm.  Plaintiff also notes that Mr. DiSanto stated in his deposition that he was not sure whether Plaintiff pulled the fire alarm, he thought that the video footage of Plaintiff was not conclusive, and he did not believe Plaintiff should have been arrested. Pl. br. at 17 (citing DiSanto Dep. at 254-256; DiSanto's Responses to Pl. Interrogatories, Set 1, No. 2).  These portions of the record are sufficient to raise a genuine issue of material fact with regard to the application of the qualified privilege.  A fact finder could find that the qualified privilege either does not apply (because Mr. DiSanto did not accuse Ms. Ciemniecki in good faith and with the purpose of helping to solve the crime) or that the privilege was abused (because Mr. DiSanto knew the accusation to be false or acted in reckless disregard of the fact that Ms. Ciemniecki did not pull the alarm).  The Parker McCay Defendants' position that Mr. DiSanto actually believed the accusations he allegedly made to the patrolmen is a competing factual assertion that cannot be resolved on a motion for summary judgment.

The burden of establishing the application of the qualified privilege is on Defendants. Feggans v. Billington, 677 A.2d 771, 777 (N.J. Super. App. Div. 1996).  Given the genuine disputes of material fact that have been raised regarding the Parker Defendants' motives for

accusing Plaintiff of raising a false public alarm, Court finds that the Parker Defendants have failed to establish the applicability of the qualified privilege at this stage.

### b.    Defamatory Nature of Statements in Mr. Norcross's Memoranda

Next, the Parker McCay Defendants argue that Mr. Norcross's internal memoranda contain no statements that are defamatory as a matter of law.  Defs.' br. at 14.  As a threshold legal matter, the Court must determine whether Mr. Norcross's statements in the internal memoranda are reasonably susceptible of defamatory meaning.  See Romaine v. Kallinger, 537 A.2d 284, 296 (N.J. 1988).  This inquiry should be guided by "'the fair and natural meaning which will be given [to the relevant language] by reasonable persons of ordinary intelligence'" as well as the context in which the language occurs.  Id. (quoting Herrmann v. Newark Morning Ledger Co., 138 A.2d 61 (N.J. Super. Ct. App. Div. 1958), aff'd on rehearing, 140 A.2d 529 (N.J. Super. Ct. App. Div. 1958); Karnell v. Campbell, 501 A.2d 1029 (N.J. Super. Ct. App. Div. 1985)).  If the statement is susceptible of only one meaning and that meaning is defamatory, the statement is libelous as a matter of law.  Id.  On the other hand, if the statement is susceptible of only one meaning and that meaning is non-defamatory, the statement cannot be slanderous.  Id. In cases where the statement is capable of both defamatory and non-defamatory meanings, the question of whether the content is defamatory properly rests with the trier of fact.  Id.

Generally speaking, defamatory words are those "that subject a person to ridicule or contempt, or that clearly sound to the disreputation of an individual."  Leang v. Jersey City Bd. of Educ., 969 A.2d 1097, 1114 (N.J. 2009) (quoting DeAngelis v. Hill, 847 A.2d 1261 (N.J. 2004)).  To determine whether a statement is defamatory, a court should consider "(1) the content, (2) the verifiability, and (3) the context of the challenged statement."  Id. (quoting

DeAngelis, 847 A.2d at 1261) (internal quotation marks omitted).  Certain kinds of statements, however, "denote such defamatory meaning that they are considered defamatory as a matter of law."  Romaine, 537 A.2d at 291.  The "false attribution of criminality" is a prime example of such a statement.  Id.; see Dijkstra, 401 A.2d at 1120 ("The words sued upon charged the commission of a crime.  Therefore they were defamatory and libelous per se."); Hill v. Evening News Co., 715 A.2d 999, 1002 (N.J. Super. Ct. App. Div. 1998) (citing Devries v. McNeil Consumer Prods. Co., 593 A.2d 819 (N.J. Super. Ct. App. Div. 1991)) ("[C]ertain statements are defamatory per se, including statements that the subject of the statement committed a crime.").

The internal memoranda stated, "Senior staff reviewed security tapes and determined with a high degree of certainty that the alarm was pulled by Sheila Ciemniecki."  Defs. Ex. PM-22, Memorandum of June 3, 2009.  Defendants argue that the internal memoranda do not actually state that Plaintiff in fact "pulled the alarm," and that, consequently, the statements cannot be susceptible of defamatory meaning.  Defs. Br. at 14.  The Court finds that that there is no material difference between these two statements, as a fact-finder could easily determine that the above-quoted statement from the Norcross memorandum accuses Plaintiff of pulling the alarm.  Such a statement, which accuses someone of pulling a fire alarm in the middle of a busy workday, when no fire has actually occurred, is a statement that tends to lower that individual's estimation in the community and subject her to disrepute.  The harm to the individual's reputation is further exacerbated when a statement is made to the police that falsely attributes criminality to the individual.  Therefore, in light of the foregoing authority, the statement in the internal memoranda is defamatory as a matter of law, but for the purposes of denying the instant motion it is enough that a genuine issue of material fact has been raised with regard to the defamatory nature of the statement in the internal memoranda.

The Parker Defendants next argue that a qualified privilege attaches to the statements in the internal memoranda.  "[T]he qualified privilege enables principled employees to report actual or suspected misconduct without fear of legal liability for defamation."  Feggans v. Billington, 677 A.2d at 776.  The critical factors that must be considered to establish the existence of a qualified privilege are as follows: "the appropriateness of the occasion on which the defamatory information is published, the legitimacy of the interest thereby sought to be protected or promoted, and the pertinence of the receipt of that information by the recipient." Kadetsky v. Egg Harbor Tp. Bd. of Educ., 82 F.Supp.2d 327, 344-45 (D.N.J. 2000).

Plaintiff argues that the defamatory information was not published for a legitimate interest, because the statements were published in bad faith.  In support of Plaintiff's position, Plaintiff notes that during Mr. DiSanto's meeting with Mr. Norcross prior to the circulation of the memoranda, Mr. DiSanto admitted that he "might have" stated his belief to Mr. Norcross that the video was not conclusive.  DiSanto Dep. at 196-200, 254-256.  Plaintiff also notes that Ms. Carmichael testified that at the time of Plaintiff's arrest, she "really was not sure" that Plaintiff had pulled the fire alarm.  Pl. br. at 20 (citing Carmichael Dep.. at 196-200).  Plaintiff notes that Ms. Carmichael had a meeting with Mr. Kline in which Mr. Kline showed her clips of the strobe lights going off for a period of time prior to Plaintiff's appearance on the video footage.  Ms. Carmichael stated that she was "very upset" when she saw these clips, because she knew that those clips involved a period of time prior to the segment of footage involving Plaintiff that was shown to the police.  Pl. br. at 20-21 (citing Carmichael Dep. at 127-128; Kline Dep. at 98-100, 132-135, 138-139).  Plaintiff argues that Mr. Norcross's memoranda were sent after these meetings that senior management had, and that therefore Mr. Norcross could not have had a "high degree of certainty" that Plaintiff pulled the fire alarm.  Plaintiff further argues that, based

11

on the timing of the events in question, the Parker Defendants circulated the memoranda for the purpose of "intentionally mislead[ing] the readers into believing that [the Parker Defendants] did nothing wrong and that Plaintiff was at fault." Pl. br. at 21. Accordingly, the Court finds that Plaintiff has raised a genuine question of material fact regarding whether the Parker Defendants circulated the memoranda for a legitimate interest.

### 2.  Invasion of Privacy (False Light), Intentional Infliction of Emotional Distress, and Negligent Infliction of Emotional Distress Claims

The Parker McCay Defendants further move for summary judgment regarding the Invasion of Privacy, Intentional Infliction of Emotional Distress, and Negligent Infliction of Emotional Distress Claims, because the qualified privilege governing defamation applies. However, as explained above, the qualified privilege does not shield the Parker McCay Defendants from Plaintiff's defamation claims at this time. Therefore, the Court denies without prejudice summary judgment regarding Plaintiff's claims for Invasion of Privacy, Intentional Infliction of Emotional Distress, and Negligent Infliction of Emotional Distress Claims.

### 3.  False Imprisonment

The Parker McCay Defendants argue that summary judgment should be granted as to the claim for False Imprisonment because there is no basis to conclude that the Plaintiff was in the conference room with the Parker Defendants and the Police Officers against her will. The Parker McCay Defendants also argue that they cannot be liable for false imprisonment because Plaintiff testified that Officer Niji and Officer McGinley conducted the arrest and asked the questions. Parker Defs.' Ex. PM-2 at 45. The Parker McCay Defendants argue that Plaintiff did not ask to leave the room during the meeting with the Officers on June 3, 2009; that Plaintiff did not have any reason to leave the meeting; that Plaintiff did not mention at any time that she did not want

to speak with the officers anymore; and that Plaintiff did not mention to the police that her husband was an attorney.  Parker Defs.' Br. at 18-20.

Here, Plaintiff has not cited any facts in the record to rebut the Parker McCay Defendants' demonstration that it was the Evesham Police, and not the Parker Defendants, who arrested Plaintiff.  Plaintiff does not bring a claim against the Evesham Police for false imprisonment.  In sum, Plaintiff has failed to identify any disputed material facts with respect to the liability of the Parker Defendants for false imprisonment.  Therefore, the Court grants summary judgment for the Parker Defendants on the false imprisonment count.

### 4. Malicious Prosecution

The Parker Defendants also move for summary judgment as to Plaintiff's claim for malicious prosecution.  To establish a claim for malicious prosecution, a plaintiff must establish: "(1) a criminal proceeding instituted or continued by the defendant against the plaintiff; (2) termination of it in favor of the accused; (3) absence of probable cause for the charge; and (4) malice, which may be 'appropriate evidence from which to infer but not necessarily establish malice.'" Drisco v. City of Elizabeth, 2010 U.S. Dist. LEXIS, at *26 (D.N.J. Mar. 23, 2010) (citing Lind v. Schmid, 337 A.2d 365, 368 (1975)).  The Parker Defendants dispute the first and fourth elements of the claim for malicious prosecution.  The Parker Defendants argue that they did not institute the criminal proceedings, and that they did not act with malice because they had no knowledge regarding how or when the exonerating footage was provided to the Prosecutor's Office.  The Parker Defendants note that "malicious prosecution is not a favored cause of action because citizens should not be inhibited in instituting prosecution of those reasonably suspected of crime." Brunson, 972 A.2d at 1119.  Nonetheless, "one who recklessly institutes criminal

proceedings without any reasonable basis should be responsible for such irresponsibility." Id. (quoting Lind, 337 A.2d at 368).

Plaintiff counters that DiSanto is listed as the Complainant on the police report, and that the Parker Defendants continued proceedings that were already instituted by failing to advise the Evesham Police Department and Prosecutor's Office of additional video footage and exonerating evidence after the arrest. See Pl. br. at 31 (citing Ex. P.53). Plaintiff argues that the Parker Defendants did not need to take any "additional investigative steps" to discover facts relating to Plaintiff's innocence. See Pl. br. at 32 (distinguishing Brunson v. Affinity Federal Credit Union, 972 A.2d 1112, 1119 (N.J. 2009)). Furthermore, Plaintiff notes that Plaintiff has made ample allegations that Defendant has acted with malice towards Plaintiff, as set forth above. See discussion supra Parts III.A.1 and III.A.2. Accordingly, the Court finds that there are numerous factual disputes as to the elements of malicious prosecution here that may not be resolved on a motion for summary judgment.

### 6. Abuse of Process

The Parker Defendants next argue that Plaintiff's claim for abuse of process should be dismissed. To state a claim for malicious abuse of process in New Jersey, a plaintiff must allege "an improper motive or a perversion of the judicial process." Caggiano v. Fontoura, 804 A.2d 1193, 1208 (N.J. App. Div. 2002). Abuse of process also requires a plaintiff to make a showing that the defendant "used" process in some fashion, and the process was used in a "coercive" or "illegitimate" manner. Hoffman v. Asseenontv.Com, Inc., 962 A.2d 532, 541 (N.J. App. Div. 2009). Defendants argue that Plaintiff has failed to allege any facts indicating that the Parker Defendants instituted process against Plaintiff. Parker Defs. br. at 25 (citing Second Am. Compl. ¶¶ 324-333). However, as described above, Plaintiff has raised a genuine question of material

14

fact as to whether the Parker Defendants initiated the criminal complaint against Plaintiff.  See discussion supra Parts III.A.1 and III.A.2.  Furthermore, Plaintiff has raised a genuine question as to the Parker Defendants' motives in using the judicial process, since Plaintiff has noted that the Parker Defendants "fail[ed] to advise the Prosecutor's Office, the police department and/or Plaintiff, without delay, that [they] knew Plaintiff did not activate the fire alarm [and] that [the Parker Defendants] had in [their] possession evidence that exonerated Plaintiff."  Second Am. Compl. ¶ 325.  Therefore, the Court finds that summary judgment on the issue of abuse of process is not appropriate at this time.

### 6. Negligence

The Parker Defendants next argue that they are not liable in negligence for failure to provide the exculpatory evidence to the prosecutor in a timely fashion.  Plaintiff acknowledges that there is no New Jersey authority to support a claim for negligence on these facts.  Pl. br. at 33-34 ("[I]t appears that the unique circumstances of this particular case have not been specifically addressed in this state . . . . Abiding by a sense of basic fairness under the circumstances of this case, and in light of considerations of public policy, this Court should recognize a duty existed for this law firm to promptly contact the Prosecutor's Office once it had in its possession evidence that exonerated the Plaintiff.").  At this juncture, this Court declines to recognize a new cause of action in negligence based on the facts of this case.  Therefore, the Court grants summary judgment to the Parker Defendants on the issue of negligence.

### 7. Wrongful Termination - Pierce Claim

The Parker Defendants next argue that they are entitled to summary judgment on the issue of Plaintiff's claim for wrongful termination under Pierce v. Ortho Pharmaceutical Corp., 417 A.2d 505 (N.J. 1980).  In Pierce, the New Jersey Supreme Court found that an at-will

employee may have a cause of action if the employee was discharged "contrary to a clear mandate of public policy."  Id. at 515.  The Parker Defendants argue that Plaintiff fails to identify a clear mandate of public policy.  Parker Defs. br. at 26-27.  However, Plaintiff alleges that it is "contrary to a clear mandate of public policy to maliciously institute insubstantial criminal proceedings."  Second Am. Compl. ¶ 284.  Plaintiff further alleges that the Parker Defendants violated this clear public policy by "knowingly giv[ing] . . . false information to a[ New Jersey] law enforcement law officer with purpose to implicate another" in violation of N.J.S.A. 2C:28-4(a).  Second Am. Compl. ¶ 285 (noting that N.J.S.A. 2C:28-4(a) is a crime of the fourth degree).  As discussed above, Plaintiff has raised genuine questions of material fact with regard to the Parker Defendants' motives for providing information to the Evesham Police Department that falsely implicated Plaintiff.  See discussion supra Parts III.A.1 and III.A.2.  The Court finds that summary judgment on Plaintiff's Pierce claim is not appropriate at this time.

### 8. Negligent Misrepresentation

The Parker Defendants further argue that they are entitled to summary judgment as to Plaintiff's claim for negligent misrepresentation.  To state a cause of action for negligent misrepresentation, a plaintiff must allege "that the defendant negligently made an incorrect statement of a past or existing fact, that the plaintiff justifiably relied on it and that his reliance caused a loss or injury."  Masone v. Levine, 887 A.2d 1191 (N.J. Super. App. Div. 2005) (citing Kaufman v. i-Stat Corp., 754 A.2d 1188 (2000)).  The Parker Defendants argue that the Second Amended Complaint does not allege an incorrect statement of fact, but rather that Parker Defendants failed to advise the Prosecutor's Office or Plaintiff of the exonerating video footage in a timely manner.  Parker Defs. br. at 27.  This argument fails because a cause of action for negligent misrepresentation in New Jersey is established where the "incorrect statement" relayed

is an omission.  Kaufman, 754 A.2d at 1189; see Reynolds v. Lancaster County Prison, 739 A.2d

413, 422-423 (defendant found liable for negligent misrepresentation due to defendant's failure

to disclose the vicious nature of the dog that defendant sold).  As discussed above, Plaintiff has

raised genuine questions of material fact regarding the nature and content of Parker Defendants'

statements and representations to the Evesham Police and Prosecutor's Office.  See discussion

supra Parts III.A.1 and III.A.2.  Therefore, the Court finds that Plaintiff should be allowed to

proceed with her claim for negligent misrepresentation.

### 9. Fraudulent Concealment of Evidence

Plaintiff attempts to raise a claim for fraudulent concealment of evidence for the first time

in her opposition brief to the Parker Defendants' motion for summary judgment.[4]  As the Parker

Defendants correctly note, Plaintiff has not alleged a claim for fraudulent concealment of

evidence in her Second Amended Complaint.  Parker Defs. Reply br. at 15.  Accordingly, the

Court grants summary judgment to the Parker Defendants as to Plaintiff's claim for fraudulent

concealment of evidence.

### B.      Plaintiff's 1983 Claim Against the Officers

The Court now considers the motion for summary judgment by the Officers and

Township (collectively, "the Municipal Defendants").  The Officers argue that they are entitled

to absolute immunity because the officers had probable cause to arrest Plaintiff for raising a false

public alarm, or alternatively that they are entitled to qualified immunity because the officers had

---

[4] As noted above, Plaintiff voluntarily dismissed her claims for negligent concealment of evidence and intentional
concealment of evidence.  Pl. br. at 2 n.2.

a reasonable belief that they had probable cause to arrest Plaintiff for raising a false public alarm.[5]

The Fourth Amendment prohibits "unreasonable searches and seizures . . . ."  U.S. Const. amend. IV.  Police are generally required to obtain a warrant based on probable cause before a search or a seizure.  <u>Terry v. Ohio</u>, 392 U.S. 1, 20 (1968).  Probable cause is a flexible standard that attempts to account for practical considerations of everday life on which reasonable people act.  <u>See</u> <u>Illinois v. Gates</u>, 462 U.S. 213, 231-232 (1983) ("probable cause is a fluid concept-turning on the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of legal rules.").  Furthermore, Officers are permitted to make reasonable mistakes about the existence of probable cause.  <u>Id.</u> at 232; <u>Forrester v. White</u>, 484 U.S. 219, 223, 227 (1988).

### 1. The Standard for Qualified Immunity

The Officers argue that they are entitled to summary judgment because their actions on the date in question were protected by qualified immunity.  Qualified immunity protects officers from liability when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  <u>Id.</u>

The Third Circuit uses a two-prong inquiry to determine whether a government official is entitled to qualified immunity in connection with the arrest of a private citizen.  <u>Pollock v. The</u>

---

[5] The Officers also move to bar the testimony of Plaintiff's expert, Dr. R. Paul McCauley, on the issue of probable cause.  Because the Court finds that the Officers are entitled to summary judgment on the issue of qualified immunity, the Court needs not hear testimony from Plaintiff's expert.

City of Phila., 403 Fed. Appx. 664, 669 (3d Cir. 2010) (citing Pearson v. Callahan, 555 U.S. 223 (2009)).  The first prong requires a court to "decide whether the facts . . . shown . . . make out a violation of a constitutional right."  Id. (quoting Pearson, 555 U.S. at 815-16).  Under the second prong, a court must "decide whether the right at issue was 'clearly established' at the time of [the] defendant's alleged misconduct."  Id. (quoting Pearson, 555 U.S. at 816) (internal quotation marks omitted).  Courts are permitted to use discretion as to which prong to apply first.  Giles v. Kearney, 571 F.3d 318, 325 (3d Cir. 2009) (citing Pearson, 555 U.S. at 816).  Qualified immunity is a question of law, but disputed issues of material fact will preclude summary judgment on qualified immunity.  Id.  "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."  Id. (quoting Pearson, 555 U.S. at 816) (internal quotation marks omitted).  Qualified immunity is an affirmative defense, and the burden of pleading it rests with the defendant.  Gomez v. Toledo, 446 U.S. 635, 639 (1980).

### 2. The Reasonableness of the Officers' Belief that Probable Cause Existed to Arrest Plaintiff

The Officers state that qualified immunity applies to protect their actions in arresting Plaintiff because the Officers had a reasonable belief that probable cause existed.  In support of their argument, the Officers argue that 1) the length and clarity of the video footage shown to them was such that a reasonable officer could have concluded that probable cause existed to arrest Plaintiff, and 2) the Officers arrested Plaintiff based on their reasonable reliance on reliable informants, namely, senior management at Parker McCay.  The Officers note that the arrest report evidences the belief of one of the arresting officers, Officer McGinley, that he observed Plaintiff pulling the fire alarm.  Municipal Def. br. at 18; Ex. P-53, Arrest Report ("I

observed Shiela [sic] on video on 6-2-2009 at 11:33am walking down the hallway towards the fire alarm device.  At this time I observed Shiela [sic] activate the fire alarm device . . . .").  Even though the Officers concede that in hindsight, the video footage did not in fact show Plaintiff pulling the fire alarm, the Officers argue that their belief that Plaintiff had activated the alarm was reasonable at the time of the arrest.  Id. at 18-19.

Plaintiff counters that it was not reasonable for the Officers to have believed that they had probable cause to arrest Plaintiff, because the video footage that the Officers saw contained a time stamp that was in fact after the time of the actual activation of the fire alarm.  Plaintiff also argues that because the video footage shown to the Officers contained strobe lights that were already flashing before Plaintiff appeared on the scene, it was unreasonable for the Officers to conclude that Plaintiff had activated the fire alarm.  Pl. br. at 11-14; 20-21.  In response, the Officers note that the short video segment that was shown to them was selected by the Parker Defendants and attested to be the relevant video footage of the fire alarm incident.  Furthermore, the Officers testified that they did not notice a time stamp on the video as they watched the clip in the Parker McCay office.  The Officers have also testified that at the time the Officers viewed the footage with the Parker Defendants, neither the Officers nor the Parker Defendants noted that there were strobe lights flashing.  The Officers further note that the video clip provided in discovery of the relevant time period has higher resolution and is clearer than the video that the Officers were shown on the day of Plaintiff's arrest.  These facts establish that though the Officers' were ultimately incorrect about the details they observed in the video footage, under the circumstances it was reasonable for the Officers to have believed that probable cause to arrest Plaintiff existed at the time of the arrest.

The reasonableness of the Officers' belief that they had probable cause to arrest Plaintiff is further bolstered by the reliability of the Officers' informants. A credible report from a single credible eyewitness is sufficient to establish probable cause. Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 790 (3d Cir. 2000). The Officers indicate in the police report that upon arrival to the Parker McCay office, Mr. DiSanto stated to Officer McGinley that Mr. DiSanto observed Plaintiff on video activating the fire alarm. See Ex. P-53, Arrest Report. The Court finds that the Officers were justified in believing that Mr. DiSanto, an attorney shareholder and Chief Financial Officer of a large and established law firm, was a credible witness. Furthermore, the Officers knew that fire department staff had viewed the video footage with the Parker Defendants just prior to the Officers' arrival, and that their consensus was that the footage showed Plaintiff pulling the fire alarm.

Plaintiff argues that the Officers should have investigated Plaintiff's alibi and examined other allegedly exculpatory evidence. However, once sufficient facts have been discovered to establish the existence of probable cause, a police officer has no further constitutional duty to investigate in hopes of finding exculpatory evidence prior to arresting an individual. See Wilson v. Russo, 212 F.3d 781, 788-789 (3d Cir. 2000) (rejecting plaintiff's argument that an officer violated plaintiff's constitutional rights by failing to further investigate after officer had learned facts sufficient to establish probable cause). Even though later information proved the Officers' belief to be factually incorrect, the fact that the Officers' belief that they had probable cause to arrest Plaintiff was reasonable at the time of the arrest. The Court finds that the reasonableness of the Officers' belief here entitles the Officers to qualified immunity. See Williams v. Atlantic City Department of Police, 2010 U.S. Dist. LEXIS 53776, at *18 (D.N.J. June 2, 2010) (granting

an arresting officer qualified immunity based on the officer's reasonable conclusion that he had probable cause to arrest the plaintiff).

**C. Plaintiff's Claim Against the Township for Failure to Train**

The Township argues that it is entitled to summary judgment on Plaintiff's Section 1983 Claim under Monell for failure to train. It is well-settled that Section 1983 does not create a cause of action against a municipality based solely on a theory of respondeat superior. Monell v. Dept. of Soc. Servs., 436 U.S. 658, 691 (1978). To hold a government entity liable for the conduct of its officials under Section 1983, the Court must find that policymakers "either deliberately chose not to provide officers with training or acquiesced to a longstanding practice or custom of providing no training . . . ." Id. Consequently, "a municipality may incur liability under § 1983 only when its policy or custom causes a particular constitutional violation." Marable v. West Pottsgrove Twp., 176 F. App'x 275, 282-83 (3d Cir. 2006).

In order to succeed on a failure-to-train claim, the plaintiff must prove that the existing custom or practice created an unreasonable risk of harm and that officials knew of and disregarded the risk. Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1999). The plaintiff must identify specific training or policies that would prevent the harm and show that "the risk reduction . . . is so great and so obvious that failure of those responsible for the content of the training to provide [the plaintiff's proposed training] can reasonably be attributed to a deliberate indifference . . . ." Woloszyn v. Cnty. of Lawrence, 396 F.3d 314, 325 (3d Cir. 2005) (quoting Colburn v. Upper Darby Twp., 946 F.2d 1017, 1029-30 (3d Cir. 1991)). "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983." Simmons, 947 F.2d at 1060. Thus, "in order to meet the deliberate indifference standard for directly subjecting a municipality

to section 1983 liability, [the plaintiff] must present scienter-like evidence of indifference on the part of a particular policymaker or policymakers."  Id. at 1060-61.

Finally, a municipality's deliberate indifference failure to train is not established by:  "(1) presenting evidence of the shortcomings of an individual; (2) proving that an otherwise sound training program occasionally was negligently administered; or (3) showing, without more, that better training would have enabled an officer to avoid the injury-causing conduct."  Simmons v. City of Phila., 947 F.2d 1042, 1060 (3d Cir. 1991).

The Court finds that Plaintiff's failure-to-train claim fails because Defendants offered ample evidence that the officers in Evesham Township received sufficient training to perform their duties, and Plaintiff fails to offer evidence that the Evesham Police Department deliberately chose not to provide their officers with additional training on how to respond to neighborhood disputes, or otherwise acquiesced to a longstanding practice of providing inadequate training in that area.

Because Defendant Officers Niji and McGinley are graduates of a New Jersey Police Academy and completed the training regimen offered by the Evesham Police Department, which included training on probable cause, there is no question that they received at least the minimum level of training necessary to perform their duties.  Thus, in order for Plaintiff to succeed on her deliberate indifference failure-to-train claim, she must put forth evidence that the Evesham Police Department knew of and consciously disregarded the risk that by failing to include additional training, including investigation of probable cause prior to an arrest, in the curriculum for mandatory in-service training, they exposed the citizens of Evesham Township to the unreasonable risk of arrest without probable cause by Evesham police officers.  Woloszyn, 396 F.3d at 325.

23

Based on the evidence before the Court, there is no genuine issue of material fact regarding Plaintiff's allegation that the Evesham Police Department failed to adequately train the officers named in this dispute.  Plaintiff points to no evidence that the Evesham Township Police Chief knew that his officers needed additional training in conflict resolution in order to prevent the kind of harm alleged in this lawsuit.  There is no evidence that Evesham Township citizens frequently complained that Evesham police officers made arrests without probable cause.  Moreover, there is no evidence that Officers Niji or McGinley previously received any punishment for unreasonably arresting individuals without probable cause.  Plaintiff's claim fails because only <u>deliberate</u> indifference gives rise to a claim for failure-to-train under the Fourth Amendment, not mere negligence.  <u>Williams v. Borough of West Chester</u>, 891 F.2d 458, 467 n.14 (3d Cir. 1989); <u>see</u> <u>Regan v. Upper Darby Twp.</u>, 363 F. App'x 917, 923 (3d Cir. 2010) (noting that a plaintiff must show "something more culpable . . . than a negligent failure to recognize [a] high risk of harm" in order to succeed on a deliberate indifference claim) (internal quotations omitted).  Thus, Plaintiff's argument that the Evesham Police Department consciously ignored the need for additional training cannot succeed.

Plaintiff's argument that better training would have prevented the harm at issue in this dispute fails as a matter of law.  (<u>See</u> Pl.'s Br. in Opp'n to Evesham Defs.' Mot. for Summ. J. at 32) ("[I]t is clear that Defendants Niji and McGinley have not been trained on how to assess video surveillance footage to determine probable cause or how to handle evidence, and the likelihood that the township's failure to train its officers will lead to another constitutional violation is quite high.").  In <u>Simmons</u>, the Third Circuit held that a plaintiff cannot succeed on a deliberate indifference failure-to-train claim by "showing, without more, that better training would have enabled an officer to avoid the injury-causing conflict."  947 F.2d at 1060.  Thus,

24

Plaintiff's contention that better training would have prevented the events that gave rise to this dispute must fail.

Therefore, because Defendants offer evidence that the Evesham Police Department ensured that Officers Niji and McGinley are graduates of a New Jersey Police Academy, and because Plaintiff fails to offer evidence that the Evesham Police Department deliberately failed to adequately train or supervise the officers under their command, Defendants are entitled to summary judgment on Plaintiff's failure-to-train claim.

### D. Plaintiff's Claims Under the New Jersey Civil Rights Act and New Jersey Constitution

Finally, Plaintiff raises claims against the Municipal Defendants under the New Jersey Civil Rights Act and the New Jersey Constitution.  Plaintiff concede that the analysis of claims under the New Jersey Constitution and the New Jersey Civil Rights Act is similar to the analysis under Section 1983 pertaining to violations of the United States Constitution, and requires no separate analysis.  Pl. br. at 35; Hedges v. Musco, 204 F.2d 109, 121 (3d Cir. 2000).  Therefore, since as discussed above, summary judgment is properly granted in favor of the Municipal Defendants on the Section 1983 claims, the Court also grants summary judgment in favor of the Municipal Defendants with regard to Plaintiff's claims under the New Jersey Constitution and New Jersey Civil Rights Act.

## IV.     CONCLUSION

For the foregoing reasons, the Court will grant the Parker McCay Defendants' motion for summary judgment as to Plaintiff's claims for false imprisonment (Count VI), negligence (Count IX), and fraudulent concealment of evidence.  The Court will deny the Parker McCay

Defendants' motion for summary judgment as to all other counts.  The Court will grant the

Officers' and the Township's motion for summary judgment.  An appropriate Order shall enter.


Dated: 1/4/12                                                      /s/ Robert B. Kugler
                                                                         ROBERT B. KUGLER
                                                                         United States District Judge

26